IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 19-cv-02090-RBJ

KENNY G. GRIGGS,

    Plaintiff,

v.

ANDREW SAUL, Commissioner of Social Security,

    Defendant.

---

ORDER

---

This matter is before the Court on review of the Social Security Administration ("SSA") Commissioner's decision denying claimant Kenny G. Griggs' application for Social Security disability insurance ("SSDI") and supplemental security income ("SSI"). Jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons explained below, the Court affirms the Commissioner's decision.

## STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2). To be disabling, a claimant's conditions must be so limiting as to preclude any substantial gainful work for at least twelve consecutive months. *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995).

1

This appeal is based upon the administrative record and the parties' briefs. In reviewing a final SSA decision, the district court examines the record and determines whether it contains substantial evidence to support the decision and whether SSA applied correct legal standards. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). The district court's determination of whether the ruling by the Administrative Law Judge ("ALJ") is supported by substantial evidence "must be based upon the record taken as a whole." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). A decision is not based on substantial evidence if it is "overwhelmed by other evidence in the record." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Reversal may be appropriate if the Commissioner applies an incorrect legal standard or fails to demonstrate that the correct legal standards have been followed. *Winfrey*, 92 F.3d at 1019.

## BACKGROUND

### A. <u>Factual Background</u>

On October 27, 2016, Kenny Griggs, then thirty-three years old, was delivering window glass to an industrial site. ECF No. 17 at 3. The truck containing the glass was parked on a slope, and as a result, over 1,000 pounds of glass slid off the truck and landed on Mr. Griggs' left leg. *Id.* Mr. Griggs lost consciousness and was taken to the hospital and diagnosed with fractures in his left tibia and fibula. *Id.* Because the accident occurred during Mr. Griggs' employment, he received health insurance under the Colorado Workers Compensation Act until July of 2017. *Id.* at 5.

On October 28, 2016 Dr. Joshua Metzl performed an open reduction and internal fixation on both fractures. *Id.* Shortly after the surgery Mr. Griggs began to experience compartment syndrome. On October 30, 2016 Dr. Metzl performed a second surgery to reduce the effects of compartment syndrome. *Id.* at 4.

On November 9, 2016 Mr. Griggs could not bear weight on his left leg and was transferred to a rehabilitative facility to recover from the surgeries. *Id.* Following rehab, Mr. Griggs was still unable to live at home, and he was transferred to a skilled nursing facility. *Id.* During this period the operative site became infected and was treated with antibiotics. *Id.*

Due to this injury Mr. Griggs used a wheelchair until March of 2017. *Id.* He then used a walker until July of 2017, and crutches until August of 2017. *Id.* He used a cane until shortly before the August 17, 2018 hearing, when the cane was stolen. *Id.* at 5. Throughout this period Mr. Griggs' treating providers noted that he experienced intense pain as well as post-traumatic stress disorder ("PTSD"), anxiety, and depression. R. 248, 253, 250, 338, 345, 350, 450.

Mr. Grigg's treating physician, Dr. Kate Liu, noted that Mr. Griggs continued to suffer severe pain and PTSD. R. 589, 619. Dr. Liu and Dr. Matthew West diagnosed Mr. Griggs with complex regional pain syndrome following his leg surgeries. R. 546, 619. Dr. Liu prescribed duloxetine and gabapentin, but on June 16, 2018 noted that the medications were unsuccessful at treating Mr. Grigg's mood and pain. R. 655.

In June of 2017 state agency psychologist Renee Eisenhauer opined that there was insufficient evidence to evaluate Mr. Griggs' impairments "due to failure to cooperate," because Mr. Griggs had failed to respond to the agency's request that he undergo a consultative examination. R. 73–74.

Following Mr. Griggs' August 2018 hearing before the ALJ, Mr. Griggs' subsequent treating physician, Dr. Dikram Sharma, provided a letter, which Mr. Griggs submitted to the Appeals Council.  R. 8.  Dr. Sharma opined that the attempts to treating Mr. Griggs' complex regional pain syndrome and PTSD had been unsuccessful.  *Id.*

### B. ALJ Decision

After evaluating the evidence of Mr. Griggs' alleged disability according to the SSA's standard five-step process, ALJ Mark R. Dawson issued an unfavorable decision.  R. 869–81.  At step one the ALJ found that Mr. Griggs had not engaged in substantial gainful activity since October 27, 2016.  R. 21.  At step two the ALJ found Mr. Griggs had a single severe impairment: right leg fracture of tibia and fibula status post open reduction internal fixation surgery, with compartment syndrome and complex regional pain syndrome.  *Id.*  The ALJ also found that Mr. Griggs had the following non-severe impairments: hypertensive condition; migraine disorder; antisocial personality disorder; and adjustment disorder.  *Id.*  At step three the ALJ determined that Mr. Griggs' impairments did not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d); 404.1525; 404.1526; 416.920(d); 416.920(d); 416.925; 416.926).  R. 22.

At step four the ALJ found that Mr. Griggs had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that Mr. Griggs can occasionally bend, stoop, kneel, crouch, and crawl.  R. 24.

In reaching this conclusion the ALJ assigned partial weight to the opinion of Mr. Griggs' neurologist, Dr. West, who opined that any job Mr. Griggs performed would need to allow him to sit and take short breaks as necessary for increased pain.  R. 27.  The ALJ noted that Dr. West

provided no evidence to support the opinion but that there was some evidence in the record that comported with Dr. West's assessment. *Id.*

The ALJ assigned great weight to the opinion of non-examining state consultant Dr. Eisenhauer. *Id.* Dr. Eisenhauer opined that there was insufficient evidence to substantiate findings in any of the "B Criteria functional domains." *Id.* The ALJ found that this opinion reflected the record while showed no evidence of severe psychological impairment. *Id.*

At step five the ALJ found that though Mr. Griggs was unable to perform his past relevant work, there are jobs that exists in significant numbers in the national economy that Mr. Griggs could perform. R. 28. Relying on the testimony of a vocational expert the ALJ found that Mr. Griggs could perform the functions of a circuit board production worker, food and beverage order clerk, and addresser. R. 29.

### C. Procedural Background

Mr. Griggs filed his application for disability benefits in December of 2016, alleging his disability began on the day of the accident, October 27, 2016. R. 142. A hearing was held on August 17, 2018. R. 35. Mr. Griggs was represented by counsel and a vocational expert testified. *Id.* During the hearing the ALJ stated that Mr. Griggs' application was for a "trial work period" rather than a closed period of disability.[1] R. 39–40. On November 16, 2018 the

---

[1] "Trial work periods" allow persons entitled to social security benefits to work without loss of benefits. *Barnhart v. Walton*, 535 U.S. 212, 212 (2002). The parties' briefs and the ALJ decision do not specify for what period Mr. Griggs sought disability benefits. From the ALJ's statements and the contents of the hearing, which focused largely on Mr. Griggs' limitations at the time of the hearing—August of 2018—I understand that Mr. Griggs was applying for benefits during a trial work period beginning sometime after his workers compensation insurance terminated in July of 2017. It is unclear to me if Mr. Griggs' sought benefits for the period of July of 2017 until he became gainfully employed in July of 2018, or for the period after his gainful employment began in July of 2018, or for both. Either way, the issue the ALJ resolved concerns Mr. Griggs' alleged disability in July of 2017 or later.

ALJ issued an unfavorable decision. R. 19–29. Mr. Griggs requested review by the Appeals Council and submitted additional evidence. R. 13. On December 7, 2018 the Appeals Council denied on the request, making the ALJ's decision final. R. 1. On July 20, 2019 Mr. Griggs filed a timely appeal in this court. ECF No. 2.

## ANALYSIS

Mr. Griggs argues that the Appeals Council should have considered evidence submitted after the hearing. He also argues that the ALJ adopted evidence supporting a denial of benefits while ignoring evidence supporting a finding of disability, including Mr. Griggs' subjective complaints. Mr. Griggs also claims the ALJ ignored evidence of his mental impairments. Finally, Mr. Griggs argues the ALJ miscalculated the total number of jobs in the national economy that he could perform. ECF No. 17 at 8.

### A. New Evidence Submitted to the Appeals Council

Under 20 C.F.R. § 404.970(a)-(b) the Appeals Council will only consider additional evidence submitted after the ALJ decision is issued if (1) the evidence is new, material, and relates to the period on or before the date of the hearing decision; (2) there is a reasonable probability that the additional evidence would change the outcome of the decision; and (3) there is good cause for not submitting the evidence earlier.

Mr. Griggs argues that the Appeals Council should have considered a letter dated May 1, 2019 written by Mr. Griggs' treating physician, Dr. Sharma. R. 8. Dr. Sharma examined and summarized Mr. Griggs' relevant medical history. *Id.* The letter also described Mr. Griggs' conditions at the time of the writing, which included "combined mononeuropathies in the foreleg including severe deep peroneal, moderately severe superficial peroneal nerve, but also moderate

6

tibial neuropathy." *Id.* Mr. Griggs' "left sural sensory is also affected." *Id.* Dr. Sharma noted that "treatment with oral agents . . . provided little to no relief," and that a cane had been ordered for Mr. Griggs due to progression in his symptoms and that evaluation for further intervention is ongoing. *Id.*

Because the ALJ issued the decision on November 16, 2018 and the letter was dated May 1, 2019 the Appeals Council concluded that the letter did not relate to the period at issue. R. 2. Mr. Griggs argues that the letter relates to the entire period following the October 2016 accident and provides a longitudinal view of Mr. Griggs' condition since that time. ECF No. 17 at 10. Mr. Griggs also claims that he had good reason for failing to submit the letter or a similar one written by Dr. Liu at the time of the hearing. *Id.* at 11. Dr. Liu left Colorado approximately two weeks before the ALJ hearing, and Mr. Griggs was unable to contact her to obtain a report containing a similar longitudinal review. *Id.* The ALJ also denied a request for an extension of time to locate Dr. Liu. R. 19.

Mr. Griggs claims without further explanation that there is a reasonable possibility that Dr. Sharma's opinion would have changed the outcome in this case. ECF No. 17 at 10. Based on such minimal information and argument, I disagree. Dr. Sharma's letter addressed Mr. Griggs' post-surgical treatment, his diagnosis of complex regional pain syndrome, and his resulting lack of mobility. It also addresses imaging showing neuropathies and treatment attempts. The ALJ's decision found Mr. Griggs' "right leg fracture of tibia and fibular status post open reduction internal fixation surgery, with compartment syndrome and complex regional pain syndrome" was a severe impairment. R. 22. As a result of this finding the ALJ found that Mr. Griggs could only perform sedentary work except that Mr. Griggs can occasionally bend,

stoop, kneel, crouch, and crawl. R. 24. These findings seem relatively consistent with Dr. Sharma's opinion, and Mr. Griggs does not explain how Dr. Sharma's findings would have altered the ALJ's decision.

In *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004), the Tenth Circuit concluded that there was no reasonable possibility that the newly submitted evidence could have changed the outcome because it "indicated at most 'the mere presence of a condition' with no vocationally relevant impact." Here, Dr. Sharma's letter indicates the presence of conditions which the ALJ's opinion recognized and adopted. The letter did not explain the vocational impact of the conditions, nor does Mr. Griggs explain how the letter should impact the ALJ's vocational findings. Therefore, I conclude that there is no reasonable possibility the evidence would have changed the outcome, and the Appeals Council did not err in declining to consider it.

### B. Evaluation of Subjective Complaints of Pain

The ALJ must consider a claimants' subjective complaints of pain. *See, e.g.*, *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010). The ALJ should consider "(1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Id.* (quoting *Branum v. Barnhart*, 385 F.3d 1268, 1273 (10th Cir. 2004)).

Mr. Griggs claims without further explanation that the ALJ improperly evaluated his subjective complaints. ECF No. 17 at 12; 13. Because Mr. Griggs does not explain exactly how

the ALJ's analysis was flawed, I assess whether the ALJ followed the process established in *Luna*.

The ALJ concluded that Mr. Griggs had a medically determinable impairment that could reasonably be expected to cause his alleged symptoms, adequately addressing the first and second *Luna* questions. R. 24. Addressing the third question, the ALJ concluded that Mr. Griggs' statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with objective evidence or his self-reported improvement, and that his pain and other impairments did not "prevent him from engaging in all work functions." R. 25. The ALJ agreed with Dr. West that Mr. Griggs' pain "could reasonably affect his capacity to perform certain tasks" but that the restrictions the ALJ placed on his RFC accounted for such limitations. R. 27. The ALJ also noted a number of instances in which Mr. Griggs' providers found improvement or when Mr. Griggs himself reported improvement in his pain. R. 26–27. I find this analysis adequately addressed the third *Luna* question.

### C. <u>ALJ's Selection of Medical Evidence</u>

Mr. Griggs argues that the ALJ impermissibly adopted evidence that supported a denial of benefits while ignoring evidence supporting a finding of disability. ECF No. 17 at 11. Mr. Griggs enumerates two specific areas of evidence he alleges the ALJ ignored: evidence of his PTSD diagnosis, and evidence of functional limitations related to his leg injury. I address each in turn.

1. <u>Medical Evidence of PTSD</u>

Mr. Griggs frames this objection as challenging the weight of various medical source opinions. *See* ECF No. 17 at 14. However, the substance of the objection goes to whether the

9

ALJ considered medical evidence, primarily contained in treating providers' notes, of Mr. Griggs' PTSD. *Id.* at 15–16. Indeed, the text of his argument does not challenge the weight assigned to any particular provider. *Id.* ("The Administrative Law Judge's election to ignore post-traumatic stress disorder in his analysis changed the result."). Therefore, I consider whether the ALJ failed to account for medical evidence of Mr. Griggs' PTSD.

Mr. Griggs argues that the ALJ failed to consider the "opinions" of Drs. Jennifer Pula, Karen Larson, Miguel Alvarado, Sheldon Goldberg, Mary Elizabeth Hicks, Steven Kent, John Sacha, Ron Carbaugh, Amanda Cava, and Kate Liu regarding his PTSD symptoms and diagnosis. ECF No. 17 at 15–16. The record contains no formal opinions from any of these providers, but it does contain treatment notes which Mr. Griggs has summarized and highlighted in an exhibit with select quotes from each provider's treatment notes. ECF No. 17-2.

In 2016, shortly after the accident, Dr. Pula diagnosed Mr. Griggs with PTSD after he presented with symptoms including night terrors, anxiety, anger, depression, insomnia, and irritability. R. 249, 250, 254. She prescribed him trazadone and referred him to a psychologist. R. 254–55. During recovery Dr. Hicks noted that Mr. Griggs was having nightmares about the accident and prescribed trazadone and Xanax. R. 449–52. In late 2016 Dr. Larson found Mr. Griggs presented with adjustment disorder with depressed mood and referred Mr. Griggs to psychology for an evaluation for depression and anxiety. R. 257–58.

In early 2017 Dr. Sacha found on two visits that Mr. Griggs showed symptoms of PTSD and prescribed temazepam. R. 522, 542. Around that time, upon referral from Dr. Pula, Mr. Griggs saw Dr. Carbaugh, who noted that Mr. Griggs presented with anxiety, fear, and anger,

and diagnosed him with adjustment disorder and other "psychological factors affecting [his] medical condition."  R. 540.

In late 2017 Dr. Liu diagnosed Mr. Griggs with PTSD and noted that he reported insomnia, depression, anger, and dwelling on past trauma.  R. 631–34.  Dr. Liu prescribed him duloxetine for his various mental health conditions.  *Id.*

The ALJ's decision states that "the record fails to evidence the severity of any psychological impairment."  R. 22.  It also explicitly discusses Mr. Griggs' antisocial personality disorder and adjustment disorder, which the ALJ found to be non-severe impairments.  *Id.*  However, the decision provides no evidence that the ALJ considered Mr. Griggs' diagnosis of PTSD.  *Id*.

Defendant is correct that "[t]he mere fact that the record mentions anxiety, depression, or PTSD is insufficient to establish the presence of a "severe" impairment within the meaning of the regulations."  ECF No. 18 at 16.  "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."  *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (citing *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984) (internal citation omitted).  However, "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  *Id.*  "[A] minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position."  *Id.* (quoting *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984)).

Though the ALJ was not obligated to discuss every instance in which a provider found that Mr. Griggs had symptoms of PTSD, or diagnosed him with PTSD and prescribed medications, the ALJ was obligated to discuss the fact that Mr. Griggs presented uncontroverted, probative evidence of an impairment. The ALJ may well have had legitimate reasons for finding this impairment not severe, or perhaps not even medically determinable. But he was obligated to lay out those findings explicitly.

Defendant argues that any error in failing to assess Mr. Griggs' PTSD was harmless. ECF No. 18 at 18. In *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004), the Tenth Circuit held that the harmless error doctrine can be appropriate when reviewing ALJ decisions in "exceptional circumstances." In some instances it "may be appropriate to supply a missing dispositive finding . . . where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id.* This is not the case here. Though the evidence of Mr. Griggs' PTSD is not extensive, it is consistent and uncontroverted. I therefore conclude that a reasonable administrative factfinder could have found that Mr. Griggs' PTSD was a medically determinable impairment.

Defendant correctly argues that an ALJ's failure to find an impairment severe may not require reversal. ECF No. 18 at 18. "As long as the ALJ finds one severe impairment, the ALJ may not deny benefits at step two but must proceed to the next step." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Thus, as the Tenth Circuit explained in *Allman v. Colvin*, "the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe." *Id.* Defendant correctly points out that

because the ALJ found that Mr. Griggs had a severe impairment, his case advanced beyond step two.  ECF No. 18 at 18.

However, as the *Allman* court noted, "an ALJ must consider the limiting effects of non-severe impairments in determining the claimant's RFC."  813 F.3d at 1330.  Had the ALJ considered all the evidence and found Mr. Griggs' PTSD to be a non-severe impairment, he still would have been obligated to consider any related limiting effects when calculating Mr. Grigg's RFC.  Indeed, under *Allman*, the ALJ was obligated to consider possible limiting effects of the non-severe psychological impairments he did note at step two, including antisocial personality and adjustment disorder.

The ALJ's step four analysis shows no evidence that he considered any psychological impairment in calculating Mr. Griggs' RFC.  In *Allman* the Tenth Circuit found the error harmless when the ALJ failed to find claimant's headaches severe at step two but did consider their limiting effects in the RFC.  *Id.* at 1330–31.  Here the ALJ acknowledged several non-severe impairments at step two and then failed to consider what, if any, limiting effects these impairments may have imposed on Mr. Griggs' RFC at step four.  R. 24–27.

But Mr. Griggs has not met his burden either.  Mr. Griggs claims that "adding a severe mental impairment to his severe physical impairments would have made [Mr.] Griggs unemployable," ECF No. 19 at 6, but he does not explain what kind of limitations the ALJ should have included in order to account for his PTSD or other mental impairments.  Nor do any of the providers' treatment notes he cites provide any opinion about functional limitations imposed by this diagnosis.  R. 450, 345, 249, 521, 542, 525, 536, 633, 634.  In his reply brief Mr. Griggs cites to an article from the New England Journal of Medicine describing the effects of

13

PTSD as including "impaired executive function and emotion regulation, . . . underlying memory and concentration deficits," etc. ECF No. 19 at 2–3. However, Mr. Griggs does not assert that he has these PTSD effects, and none of his providers opined that any of Mr. Griggs' PTSD symptoms would interfere with his ability to work. ECF No. 19 at 3-4.

       Given Mr. Griggs' failure to explain what limiting effects the ALJ should have included, the ALJ's failure to explicitly consider possible limiting effects of Mr. Griggs' PTSD is not reversible error. In *Paulsen v. Colvin* the Tenth Circuit found no reversible error when the ALJ failed to consider a claimant's obesity, asthma, and chronic pain syndrome when there was no evidence or argument that these conditions "separately or in combination with her other impairments, resulted in any work-related limitations beyond those found by the ALJ." 665 F. App'x 660, 668 (10th Cir. 2016) (unpublished). "Diagnosis of a condition does not automatically mean that the claimant is disabled; what matters is whether the condition results in work-related limitations." *Id.*; s*ee also Shelton v. Colvin*, 663 F. App'x 690, 695 (10th Cir. 2016) (unpublished) (rejecting claimant's argument that her impairments were inconsistent with her RFC because the claimant "doesn't explain why . . . the ALJ's RFC limitations don't adequately address her moderate problems with concentration, persistence, and pace"); *Cochran v. Colvin*, 619 F. App'x 729, 732 (10th Cir. 2015) (unpublished) (finding no reversible error when claimant failed to indicate what limitations the ALJ omitted and review of the record revealed no functional limitations related to a hand impairment).

       Courts in this district have recently found the same: "[T]he burden lies with [the claimant] to 'show more than the mere presence of a condition or ailment,' . . . but rather that her non-severe impairments cause specific functional limitations." *Cerda v. Comm'r, Soc. Sec.*

14

*Admin.*, No. 19-CV-02317-NYW, 2020 WL 4287192, at *6 (D. Colo. July 27, 2020) (citing *Cochran v. Colvin*, 619 F. App'x 729, 731-32 (10th Cir. 2015); *Wilson v. Astrue*, 602 F.3d 1136, 1140-41 (10th Cir. 2010); *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997)) (internal citations omitted).

Mr. Griggs has provided no argument, and I have encountered nothing in the record, indicating specific limitations the ALJ should have considered in calculating Mr. Griggs' RFC. As such I find no reversible error in the ALJ's RFC calculation on this issue.

   2. Functional Limitations from Leg Injury

Mr. Griggs also states that the ALJ "ignored observations and opinions of multiple medical experts" on the issue of his ability to function stemming from his tibia fracture and complex regional pain syndrome. ECF No. 17 at 13. Mr. Griggs does not point to any particular "medical expert's" opinion or observation. *Id.* I have reviewed Mr. Griggs' exhibit summarizing various providers' treatment notes, ECF No. 17-2, and find no evidence that the ALJ failed to address a provider opinion on Mr. Griggs' functional limitations that contradicted the decision.

**D. Calculation of Jobs in National Economy**

Based on the testimony of the vocational expert, at step five the ALJ found Mr. Griggs could perform three jobs: circuit board production worker, food and beverage order clerk, and addresser. R. 28. The ALJ concluded these jobs existed in significant numbers in the national economy, with 45,000 circuit board positions, 50,000 food and beverage positions, and 30,000 address positions, amounting to 125,000 positions. R. 29. Mr. Griggs argues that this number is

insufficient for the ALJ to determine these jobs exist in significant numbers in the national economy.  ECF No. 17 at 18.

In *Trimiar v. Sullivan*, the Tenth Circuit listed several factors a judge should consider determining whether work exists in significant numbers, including "the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; [and] the types and availability of such work."  966 F.2d 1326, 1330 (10th Cir. 1992) (quoting *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988)).  Twelve years later, in *Allen v. Barnhart*, the Tenth Circuit held that in determining whether jobs exist in significant numbers, "judicial line-drawing . . . is inappropriate."  357 F.3d 1140, 1144 (10th Cir. 2004).   The court explained "that the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation, and, most importantly, that the evaluation should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation."  *Id.*  The court remanded to the ALJ for consideration of the *Trimiar* factors, declining to find that 100 statewide jobs met the requisite numerical significant as a matter of law.  *Id.* at 1144–55.

Despite the warning against line-drawing, in subsequent cases the Tenth Circuit has found various numbers to meet the numerical significance requirement as a matter of law.  In *Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) (unpublished), an unpublished opinion, the Tenth Circuit held that 152,000 jobs in the national economy met the requisite numerical significance.  In *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009), the Tenth Circuit, citing *Stokes*, found that 1.34 million jobs in the national economy was sufficient.

*Stokes* is quite persuasive in this case.  The *Stokes* court found 152,000 jobs significant as a matter of law.  That court stated that "we do not believe any reasonable factfinder could have determined that suitable jobs did not exist in significant numbers in either the region where Ms. Stokes lives or several regions of the country."  I find that the 125,000 jobs that the ALJ found to exist in the national economy in this case is sufficiently close to the 152,000 found in *Stokes*.

Mr. Griggs cites *Ladenburger v. Colvin*, No. 15-CV-02182-RM, 2017 WL 1352274, at *3 (D. Colo. Apr. 13, 2017), in which a District of Colorado court found defendant had not established as a matter of law that 44,000 jobs in the national economy was significant.  In *Ladenburger* the court noted that the 152,000 jobs found in *Stokes* was three times as many as the 44,000 found in that case.  *Id.*  *Stokes* is a much more appropriate comparison to the instant case than *Ladenburger*.

Mr. Griggs also cites *Friedenberger v. Commissioner, Social Security Administration*, No. 1:17-cv-00519, slip. op. at 24 (D. Colo. Dec. 5, 2018), in which the court made "no finding that 58,000 jobs in the national economy is or is not a significant number," noting that it could affirm such a finding had the ALJ provided more reasoning on the issue.  The court relied on *Chavez v. Barnhart*, 126 F. App'x 434, 436 (10th Cir. 2005) (unpublished) in which the Tenth Circuit "remanded the issue of whether 49,957 jobs nationally and 199 in the region, standing alone, qualified as significant numbers under the statute."  *Id.*  Like *Ladenburger*, *Friedenberger* cannot outweigh *Stokes*, which is closer to the instant case.  Mr. Griggs' other citations are equally unpersuasive.  *See West v. Chater*, No. C-1-95-739, 1997 WL 764507, at *3 (S.D. Ohio Aug. 21, 1997*)* ("[T]he Court finds as a matter of law that 100 jobs locally, 1,200 jobs statewide and 45,000 jobs nationally do not constitute a significant number of jobs."); *see also Leonard v.*

17

*Heckler*, 582 F. Supp. 389, 391 (M.D. Pa. 1983) (finding 4,000 to 5,000 jobs in the national economy is not significant).

Therefore, I conclude the ALJ did not error in concluding that 125,000 jobs constituted significant numbers for the purposes of the statutory requirement.

## ORDER

The Court does not doubt that Mr. Griggs' medical conditions are serious and affect his life significantly. However, after reviewing the record and the parties' briefs, I do not find that the arguments warrant a reversal of the ALJ's decision. Accordingly, the Court AFFIRMS the Commissioner's decision denying Mr. Griggs' application for SSI and SSDI.

DATED this 6th day of August, 2020.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge